IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

WHITNEY MATTHEWS,
*Individually and on behalf of all others similarly situated* PLAINTIFF

v. CIVIL ACTION NO. 1:26-CV-44-SA-DAS

NEW OEC JAPANESE EXPRESS MS LLC DEFENDANT

ORDER APPROVING SETTLEMENT

On April 1, 2026, Whitney Matthews filed her Complaint [1] against New OEC Japanese Express MS LLC ("OEC"), alleging violations of the Fair Labor Standards Act ("FLSA"). Now before the Court is the parties' Joint Motion for Settlement Approval [11].

*Relevant Factual and Procedural Background*

OEC operates a Japanese restaurant in Starkville, Mississippi. Matthews was employed at OEC as a front counter worker from approximately August 22, 2023 until she resigned on March 2, 2026.

Matthews contends that, throughout the entirety of her employment, OEC maintained a policy and practice of retaining 100% of all tips left by customers for OEC employees, such as herself. According to the Complaint [1], "[t]his policy applied to cash tips, credit and debit card tips processed through the [point of sale] system, and tips placed through online ordering platforms[.]" [1] at p. 5. Matthews' pay stubs from throughout her employment reflect $0.00 in tips.

Matthews' Complaint [1] alleges that OEC's policy and practice violates the FLSA, particularly 29 U.S.C. §203(m)(2)(B). Shortly after the lawsuit was initiated, OEC filed a Motion [6] requesting an extension of time to file a responsive pleading, wherein OEC represented to the Court that a settlement was likely imminent. The parties subsequently reached a settlement

agreement. *See* [11], Ex. 1. The settlement agreement reflects a $25,000.00 total settlement, consisting of $15,000.00 payable to Matthews for "alleged wages, liquidated damages and non-wage relief" and $10,000 payable to Simpson, PLLC (the law firm of Matthews' counsel). *Id*. at p. 2. The amount payable to Simpson, PLLC consists of $9,500.00 in attorneys' fees and $500.00 in costs and expenses.

On August 20, 2026, the parties filed the present Motion [11]. They request judicial approval of the settlement.

*Analysis*

The FLSA provides that "[a]ny employer who violates section 203(m)(2)(B) of this title shall be liable to the employee [] affected in the amount of the sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

Although there is some dispute as to whether judicial approval of an FLSA settlement of this nature is necessary, this Court customarily reviews them. *See*, *e.g.*, *Ellis v. Baptist Mem'l Health Care Corp.*, 2021 WL 1206408, *2 (N.D. Miss. Mar. 30, 2021) (citing *Martin v. Spring Break '83 Productions, LLC*, 688 F.3d 247, 257 (5th Cir. 2012)) ("An individual cannot waive their rights under the FLSA."); *see also Smith v. Humphreys Cnty., Miss.*, 2023 WL 2587483 (N.D. Miss. Mar. 21, 2023).

"In order to approve a settlement proposed by an employer and employees of a suit brought under the FLSA and enter a stipulated judgment, the Court must determine (1) that the settlement resolves a bona fide dispute over FLSA provisions and (2) that the resolution is fair and reasonable." *Ellis*, 2021 WL 1206408 at *2 (quoting *Lee v. Metrocare Servs.*, 2015 WL 13729679 at *1 (N.D. Tex. July 1, 2015)).

*I. Bona Fide Dispute*

First, "[t]o establish that this settlement arises from a bona fide dispute, 'some doubt must exist that the plaintiffs would succeed on the merits through litigation of their claims.'" *Stephens v. Take Paws Rescue*, 2022 WL 2132286, at *2 (E.D. La. June 14, 2022) (quoting *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 719-20 (E.D. La. 2008)) (additional citation omitted). The presence of an adversarial lawsuit with attorneys representing both parties is insufficient to satisfy the bona fide dispute requirement, though it is relevant. *Id.* (citing *Rosa v. Gulfcoast Wireless, Inc.*, 2018 WL 6326445, at *1 (E.D. La. Dec. 3, 2018)); *see also Ellis*, 2021 WL 1206408 at *2 (citing *Collins*, 568 F. Supp. 2d at 719-20).

Here, both parties are represented by counsel. After being served in this case, OEC retained counsel who actively investigated the allegations. Counsel represent to the Court in their Joint Memorandum [12] that their independent investigations have yielded competing viewpoints on the amount of customer tips at issue. They also dispute whether OEC fully and properly compensated Matthews and whether OEC acted in good faith and on reasonable grounds, such that liquidated damages would be unavailable to Matthews. Furthermore, counsel recognize the inherent risks and expenses associated with continued litigation.

Taking all of this into account, the Court is satisfied that the proposed settlement arises from a bona fide dispute between Matthews and OEC.

*II. Fair and Reasonable Settlement*

Second, to determine whether a settlement is fair and reasonable, the Court must consider six factors:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the possibility of plaintiff's success on the merits; (5) the range of

> possible recovery; and (6) the opinions of class counsel, class representatives, and absent class members.

*Ellis*, 2021 WL 1206408 at *2 (citing *Birdie v. Brandi's Hope Comm. Servs., LLC*, 2018 WL 3650243, at *2 (S.D. Miss. Aug. 1, 2018)).

"[T]here is a strong presumption in favor of finding a settlement fair." *Stephens*, 2022 WL 2132286 at *2 (citing *Camp v. Progressive Corp.*, 2004 WL 2149079, at *5 (E.D. La. Sept. 23, 2004) in turn citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). "While these six factors are more applicable to a collective action under FLSA than an action involving a single plaintiff, the Court will use them to guide its analysis to the extent feasible." *Rosa*, 2018 WL 6326445 at *2 (citing *Collins*, 568 F. Supp. 2d at 722).

First, "[t]he Court may presume that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *Collins*, 568 F. Supp. 2 at 725 (citing *Camp*, 2004 WL 2149079 at *7). The parties contend that the settlement was "not the result of fraud or collusion. Rather, the settlement was reached as a result of arm's-length negotiations that involved experienced counsel on both sides." [12] at p. 5.

The Court has no reason to question the veracity of the parties' joint position in this regard. Although the settlement agreement was reached prior to the formal exchange of discovery, the Court trusts counsel's representations that they engaged in independent investigations of the underlying facts and that the proposed settlement is the product of their good faith settlement negotiations.

As to the second factor, the nature of this claim is not overly complex. But the Court recognizes and takes as true the parties' statement that, absent settlement, they "would have engaged in extensive written and other discovery concerning Defendant's tip and payroll practices and proceeded through dispositive motions and trial[.]" *Id.* at p. 6.

The third factor concerns the stage of the proceedings and the amount of discovery completed. *Ellis*, 2021 WL 1206408 at *2. Again, this litigation has commenced only relatively recently, but the Court accepts the parties' representations that they have independently investigated and had an opportunity to evaluate the claims and defenses.

The fourth and fifth factors concern Matthews' likelihood of success on the merits and the range of possible recovery. *See id*. The parties' Joint Memorandum [12] addresses this point directly:

> Based on the data exchanged by the Parties, the maximum amount of customer tips allegedly retained during a two-year limitations period totals approximately $7,800.00, and the maximum amount during a three-year limitations period—which would apply only upon proof that any violation was willful, *see* 29 U.S.C. § 255(a)—totals approximately $11,700.00. The Fifteen Thousand Dollars ($15,000.00) payable to Matthews under the Settlement Agreement, net of all attorneys' fees and costs, therefore represents approximately 192% of the maximum customer tips at issue under a two-year limitations period and more than 128% of the maximum customer tips at issue under a three-year limitations period. Matthews will realize this recovery notwithstanding the genuine risk that she would recover nothing or much less. Defendant denies that it retained any customer tips or underpaid Matthews in any respect and maintains that it acted in good faith and on reasonable grounds—a defendant that, if credited, would foreclose liquidated damages . . . and confine any recovery to a two-year rather than a three-year look-back[.] The settlement eliminates the substantial inherent risks both sides would bear if this case were to continue.

[12] at p. 7 (some citations omitted).

The Court agrees. The fourth and fifth factors weigh in favor of approval of the parties' settlement.

The sixth factor concerns the opinions of counsel. *See Ellis*, 2021 WL 1206408 at *2. Counsel assert that they believe, based on their experience, that this settlement is fair and reasonable. The Court accepts their representations.

As part of its analysis for fairness and reasonableness, the Court must also consider the reasonableness of the proposed attorneys' fees and expenses. *Id.* at *3 (citing *Price v. On Trac Inc.*, 2018 WL 6804326 at *1 (W.D. La. Dec. 19, 2018)). The Fifth Circuit uses the lodestar method to calculate an appropriate award of attorneys' fees under the FLSA. *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) (citing *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1042 (5th Cir. 1999)). "The lodestar is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work." *Id.* (citing *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012)). After calculating the lodestar, the court may adjust the amount of attorneys' fees based on the relative weight of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *Id.* (citing *Perdue v. Kenny A.*, 559 U.S. 542, 552, 130 S. Ct. 1662, 176 L. Ed. 2d 494 (2010)).

Here, Matthews' counsel requests $9,500.00 in attorneys' fees. He represents to the Court—and executed an affidavit in support—that he has expended 31 hours litigating this matter to date. The negotiated fee of $9,500.00 yields an effective hourly rate of approximately $306.00, which counsel represents is below his typical hourly rate of $350.00.

As to that proposed effective rate, "[w]hen an attorney's billing rate is not contested, it is *prima facie* reasonable." *DeArmond v. Alliance Energy Services, LLC*, 2018 WL 2463207, at *5 (E.D. La. June 1, 2018) (citing *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995)). The Court calculates the lodestar amount to be $9,500.00.

"There is a strong presumption that the lodestar award established by the district court is the reasonable fee." *Howe v. Hoffman-Curtis Partners Ltd., LLP*, 215 F. App'x 341, 341 (5th Cir.

2007) (per curiam) (citing *Heidtman*, 171 F.3d at 1044). In exceptional cases, the Court may increase or decrease the lodestar based on the factors outlined in *Johnson*:

> (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Saizan v. Delta Concrete Products Co., Inc.*, 448 F.3d 795, 800 n.18 (5th Cir. 2006) (citing *Johnson*, 488 F.2d at 717-19).

The Fifth Circuit has cautioned that any *Johnson* factor already considered in the lodestar amount should be disregarded in determining whether the lodestar should be adjusted. *Hendrix v. Evergreen Hauling*, 2019 WL 138160, at *4 (N.D. Miss. Jan. 8, 2019) (citing *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998)). Factors one, two, three, four, five, seven, eight, and nine are usually implicated in the lodestar calculation. *See Michael v. Boutwell*, 2015 WL 9307838, at *2 (N.D. Miss. Dec. 21, 2015) (citing *Sales v. Bailey*, 2015 WL 1825060, at *4 (N.D. Miss. Apr. 22, 2015)) (additional citations omitted). Moreover, since *Johnson* was decided, the Supreme Court has held that the sixth factor should not be considered. *Sales*, 2015 WL 1825060 at *4 (citing *City of Burlington v. Dague*, 505 U.S. 557, 567, 112 S. Ct. 638, 120 L. Ed. 2d 449 (1992)).

This leaves the Court to consider factors ten, eleven, and twelve, which concern the undesirability of the case, the nature and length of the professional relationship with the client, and awards in similar cases. The Court has considered these factors and finds that they provide no basis

to modify the lodestar amount. Similarly, the Court has considered and finds reasonable the request for $500.00 in expenses associated with the case.

Ultimately, the Court sees no reason to depart from the parties' request as to attorneys' fees and costs.

*Conclusion*

For the reasons set forth above, the Court finds that the proposed settlement, including the proposed costs and attorneys' fees, represents a fair and reasonable resolution of a bona fide dispute. The Joint Motion for Settlement [11] is APPROVED. All claims are hereby dismissed *with prejudice*. This CASE is CLOSED.

SO ORDERED, this the 6th day of November, 2026.

/s/ Sharion Aycock
SENIOR UNITED STATES DISTRICT JUDGE